JAMES L. SMITH and CAROLYN S. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 30121-82.
United States Tax Court
T.C. Memo 1984-661; 1984 Tax Ct. Memo LEXIS 14; 49 T.C.M. (CCH) 353; T.C.M. (RIA) 84661; December 20, 1984. Richard L. Stradley, for the petitioners. Peter R. Hochman, for the respondent. FAY MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Sec. 6653(a) [1]
Year
Deficiency
Addition to Tax
1979
$10,857
$543
1980
10,691
535
The issues are: (1) whether petitioners are entitled to deductions for charitable contributions for amounts purportedly contributed to the Universal Life Church; (2) whether petitioners are entitled to a deduction for union dues in excess of the amount allowed by respondent; (3) whether petitioners are *16 entitled to a deduction for tax consulting fees; (4) whether petitioners are liable for additions to tax under section 6653(a); and (5) whether petitioners are liable for damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, James L. (James) and Carolyn S. (Carolyn) Smith, resided in Anchorage, Alaska, when they filed the petition herein. James was employed as a longshoreman during the years in issue. Carolyn was employed as an insurance agent during 1979, and as a census taker during part of 1980. On their Federal income tax returns for 1979 and 1980, petitioners reported gross income, consisting largely of wages, of $70,709 and $68,485, respectively. In July 1979 petitioners formed a chapter of the Universal Life Church, Inc., designated as Charter No. 30683, which they referred to as the Denali Universal Life Church (herein "ULC Charter No. 30683.") In connection therewith, Carolyn opened Account No. 157084 at the AlaskaU.S.A. Federal Credit Union in the names of Universal Life Church Inc. and Denali Universal Life Church (herein the "ULC account"). Although Carolyn and her daughter, Debbie Allen, *17 shared signatory powers over the ULC account during the years in issue, petitioners had full control over such account and determined the purposes for which funds therein would be used. Petitioners used funds in the ULC account to pay various expenses, including mortgage payments on a trailer which they owned and designated as their church address, as well as telephone and other utility bills, and automobile expenses. Many of these expenditures were identical in nature to those incurred by petitioners prior to their formation of ULC Charter No. 30683. [2]
*18 On their Federal income tax returns for 1979 and 1980, petitioners deducted as charitable contributions the amounts deposited by them to the ULC account, consisting of $26,177 for 1979 and $22,676 for 1980. In addition, petitioners claimed deductions of $2,779 for union dues for 1979 and $400 for tax consulting fees for 1980. In his notice of deficiency, respondent disallowed the claimed deductions for amounts deposited to the ULC account for 1979 and 1980. Respondent also disallowed $298 of the deduction for union dues claimed for 1979 and disallowed in full the deduction for tax consulting fees claimed for 1980. Respondent also asserted additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. OPINION The first issue is whether petitioners are entitled to deductions under section 170 for amounts claimed as charitable contributions to the Universal Life Church. Section 170(a) allows a deduction for charitable contributions made during the taxable year. The term "charitable contribution" is defined in section 170(c) as follows: (c) Charitable Contribution Defined.--For purposes of this section, the term *19 "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or fundation-- (A) * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * The burden of proving entitlement to a deduction is on petitioner. ; Rule 142(a). Thus, petitioners must show that all requirements of section 170 have been satisfied. In considering the record herein, we conclude that petitioners have failed to carry their burden. First, section 170(a) requires that a charitable contribution actually be made within the taxable year for which a deduction is sought. The term "charitable contribution" as it is used generally in section 170 is largely synonymous with the term "gift." ; , affd. . It is well established that *20 where taxpayers retain dominion and control over funds, as petitioners did by means of Carolyn's signatory powers over the ULC account, no charitable contribution or gift will be considered to have been made. See e.g., ; , and cases cited therein, on appeal (9th Cir., June 25, 1984). Petitioners' retained control of the funds deposited to the ULC account thus precludes a finding that they actually made charitable contributions. See . Moreover, in order for contributions thereto to be deductible under section 170, an organization must be both organized and operated exclusively for exempt purposes. Sec. 170(c)(2)(B). The only evidence introduced by petitioners relating to the organization of ULC Charter No. 30683 was a document entitled "Bylaws; Universal Life Church, Inc; Congregation Number 30683." Such document contains no provision limiting the purposes of ULC Charter No. 30683 exclusively to exempt ones, and does not satisfy petitioners' burden of proving that ULC Charter No. 30683 *21 was organized exclusively for exempt purposes as required by section 170(c)(2)(B). Similarly, Carolyn's testimony concerning the operation and activities of ULC Charter No. 30683 was vague and affords us no basis on which to conclude that such entity was operated exclusively for exempt purposes as required by section 170(c)(2)(B). Petitioners have also failed to establish, as they must under section 170(c)(2)(C), that no part of the net earnings of ULC Charter No. 30683 inured to the benefit of private individuals. This Court has construed section 170(c)(2)(C) to prohibit the inurement of any benefit, however slight, to private individuals. See , and cases cited therein, affd. without published opinion . Petitioners stipulated that they alone had control of funds in the ULC account, some of which were used to pay expenses such as mortgage payments on a mobile home used as their residence, as well as telephone and other utility bills. Such expenditures were of an inherently personal nature, and of a type incurred by petitioners prior to their formation of ULC Charter *22 No. 30683. It is thus clear that at least some part of the net earnings of ULC Charter No. 30683 inured to the private benefit of petitioners, contrary to the provisions of section 170(c)(2)(C). Based upon the foregoing, we conclude that petitioners have failed to satisfy their burden of proof with respect to this issue, and are thus not entitled to a deduction under section 170 for amounts claimed to have been contributed to the Universal Life Church. [3] Accordingly, respondent's determination with respect to this issue is sustained. *23 The second issue is whether petitioners are entitled to a deduction for union dues in excess of the amount allowed by respondent. The determination of respondent as set forth in the notice of deficiency is presumed correct, and petitioners have the burden of proving that they are entitled to the claimed deduction. ; Rule 142(a). Representations to the contrary in petitioners' briefs notwithstanding, petitioners introduced no evidence and gave no testimony whatsoever concerning the claimed deduction for union dues. [4] Petitioners have thus failed to carry their burden of proof, and accordingly, respondent's determination with respect to this issue is sustained. The third issue is whether petitioners are entitled to a deduction *24 of $400 for tax consulting expenses for 1980. As noted, respondent's determination is presumed correct, and petitioners have the burden of proving that they are entitled to the deduction. ; Rule 142(a).The only evidence presented by petitioners to substantiate the claimed deduction was a copy of a bill from their tax return preparer. The Court admitted this document into evidence only for the limited purpose of showing that it was a document which had been received by petitioners, and not for the purpose of asserting that the bill had in fact been paid.Petitioners contended that they paid the bill by check, but introduced no checks into evidence. Petitioners have thus failed to satisfy their burden of proof, and accordingly respondent's determination with respect to this issue is sustained. [5]
*25 The next issue is whether petitioners are liable for additions to tax under section 6653(a), which provides that if any part of the underpayment is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment.Petitioners bear the burden of proof on this issue. ; . Although petitioners assert that they were not negligent because they relied upon a return preparer, the general rule is that the duty of filing accurate returns cannot be avoided by placing the responsibility on an agent. See ; , and cases cited therein. Carolyn's testimony concerning the role played by the preparer which may have caused the underpayment herein was vague and unconvincing, and we accord it no weight. We conclude that petitioners have failed to satisfy their burden of proving that no part of the underpayment herein was due to negligence or intentional *26 disregard of rules and regulations, and are thus liable for additions to tax for 1979 and 1980 under section 6653(a). The final issue is whether damages shall be awarded to the United Stated pursuant to section 6673 as requested by respondent in his amended answer. Although the petition in this case was filed on December 29, 1982, section 6673 is applicable in its form as amended by section 292(b) of Pub. L. 97-248. [6] In such form, section 6673 provides that the Court may award damages to the United States of up to $5,000 whenever it appears that the proceedings have been instituted or maintained primarily for delay or that the taxpayer's position therein is frivolous or groundless.We have considered the record herein, and in our discretion, have decided that damages will not be awarded in this case. *27 To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In connection with discovery in this case, respondent timely served upon petitioners a set of interrogatories and a request for production of documents.In the latter, respondent requested that petitioners produce, interalia,↩ documentation which would substantiate their claimed deductions, such as cancelled checks. Petitioners having failed to comply with respondent's discovery requests, the Court, on respondent's motion, imposed sanctions pursuant to Rules 104(a) and 104(c)(2) by precluding petitioners from introducing at trial any documentary evidence concerning the ULC account other than that previously stipulated to by the parties.
3. Petitioners raise an alternative argument on brief that amounts deposited to the ULC account constituted contributions "for the use of" the Universal Life Church, of Modesto, Calif. ("ULC, Modesto"). Cf. sec. 170(c). As noted above, petitioners' retained dominion and control over these amounts precludes a finding that they in fact made any charitable contributions in this case. Furthermore, petitioners introduced no evidence that such amounts benefited ULC, Modesto in any way. Petitioners rely upon the testimony given by Bishop Robert Imbeau of ULC, Modesto in another case involving similar issues held during the same trial session. See . Even assuming that Bishop Imbeau's testimony in the present case would have been the same as it was in Abercrombie,↩ such testimony would not establish that the amounts here in question were contributions "for the use of" ULC, Modesto. Accordingly, we reject petitioners' alternative argument.
4. Although at trial petitioners sought to introduce a copy of a document purporting to show union dues paid by James, the document was in large part illegible, and the Court sustained respondent's objection to the introduction of the document into evidence. Nevertheless, petitioners' reply brief completely ignores our ruling on this document and asks us to consider it as part of the evidence in this case.↩
5. We note also that petitioners failed to respond to paragraph 15 of respondent's request for admissions dated February 15, 1984, which requested petitioners to admit that they "did not incur and/or pay tax consulting expenses totaling $400.00 in 1980." Their failure to respond results in the matter asserted in such request being deemed admitted. Rule 90(c). , affd. .↩
6. Although sec. 6673 as so amended was initially effective only with respect to actions or proceedings commenced in this Court after December 31, 1982, the statute has been amended so that sec. 6673 in its amended form will apply with respect to any action or proceeding pending in this Court on November 15, 1984, irrespective of the date on which it was commenced. See Tax Reform Act of 1984, Pub. L. 98-369, sec. 160, 98 Stat. 496, amending sec. 292(e)(2) Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 574.↩